WILSON v. WALKER.

1. A statute of another State may be proved by an exemplification under the great seal of the State.
2. The seal should be affixed by the person to whom the custody or use of it has been legally confided, and accompanied by a certificate expressive of the object for which it is used.
3 The statute of 1819, which provides that the borrower may establish a defence of usury by his own oath in certain cases, does not extend to contracts made out of this State, by persons residing in other States.
4. Does the statute operate where the original parties to the contract are dead, equally as if living? Quere.

OFFA WILSON, as administrator of Henry M. Wilson, deceased, instituted an action of assumpsit in Shelby Circuit Court, in 1827, against Joseph Walker, to recover on a note for $1200, made by the defendant, dated at Washington City, January 22, 1823, and payable on or before the 10th of April next, thereafter, to the order of Henry M. Wilson. The defendant pleaded that the note was given and founded on an usurious contract; that it was made in the District of Columbia; that by the laws of the State of Maryland, which originally included the place of the contract, the legal rate of interest was limited to six per cent per annum, yet that by the contract, the sum of $54, a rate exceeding six per cent, was reserved and paid in advance for the loan or forbearance of the sum secured by the note, wherefore the note was void. Issue was joined, and the cause was tried at September term, 1828, before the Honorable Judge White. To support his pleas, the defendant offered in evidence an authenticated copy of an act of the late Province, now State of Maryland, entitled "An Act against excessive usury," passed in the year 1704. The transcript was certified by F. Harris, Clerk of the Court of Appeals for the western shore of Maryland, under his hand and the seal of his office, to be a full and true copy taken from the law records of his office. John Buchannan, Chief Judge of the Court of Appeals, certified that Harris was Clerk of the Court of Appeals for the western shore, that his attestation was in due form and by the proper officer. Thomas Culbreth, as Clerk of the Executive Council of Maryland, certified that Buchannan was Chief Judge, &c, as his certificate purported. In addition to this, appeared the certificate of Ramsey Waters, as Register of the Court of Chancery of Maryland, certifying

JULY 1830

Wilson
v.
Walker.

that Culbreth, who appeared to have signed the foregoing certificate as Clerk of the Executive Council, was at the time, the officer he assumed to be, and this certificate was authenticated under the great seal of the State. This paper was objected to by the plaintiff, but the objection was overruled, and it was admitted to prove the law of Maryland in relation to usury. The defendant then produced a statement of facts, sworn to by him, in which he deposed that $54 had been received by H. M. Wilson in his life time, for the loan of said sum of money for three months, and offered himself as a witness under the statute, to prove the usury. The plaintiff objected to his becoming a witness, because the transaction occurred in Washington, and under the laws of Maryland. This objection was also overruled, the defendant was permitted to testify, and there was a verdict and judgment for the defendant.

Wilson assigned in this Court, the above mentioned decisions of the Circuit Court as error.

PECK, for the plaintiff in error. The statute of Maryland was not properly authenticated [a] The great seal of the State is affixed to the transcript it is true, but it was not fixed there as evidence of the law, or to authenticate it; it was attached merely to authenticate the fact that Culbreth was Clerk of the Executive Council, and nothing more. The seal cannot establish any thing further than what it purports. In Maryland, the Clerk of the Council is not an officer competent by law, to authenticate copies.[b] The officer having the custody of the great seal, should have certified that the paper was a true copy of the law; and by the constitution, it appears that the Chancellor was the proper officer.[c] No law is shewn which authorises the Clerk of the Court of Appeals for the western shore, to certify the law. He is then to be considered as competent to certify only the judicial proceedings of his Court, but not the laws of the State. But if it were admitted that the law was properly authenticated, it could only prove what was the law in 1704; it should have been shewn that it was still in force when the note was made, else it was irrelevant.

*a* 2 Vol. Laws U. S. 102—3. Idem 3 vol. 621. 1 Starkie's Ev. 153. Note 1. 163. Note 2.

*b* 3 Harris & McHenry, 502, cited in 1 Starkie's Ev. 154 Note 1.

*c* Con. of Maryland, Art. 36.

The Court erred in permitting the defendant himself to give evidence as to usury. The act of 1819 can have influence only on such notes as are made within the municipal jurisdiction of the State, or made in contemplation of the act. The statute is in derogation of the common

law, and must receive a strict construction.[a] Besides, it is highly penal. It cannot be construed to operate to the injury of citizens of other States, who did not contract in reference to it, and who had it not in contemplation. It must be confined to contracts made in violation of the particular act, and in which a higher rate is reserved than the particular rate specified in the act, and not extended to contracts made usurious by other laws. The defence relied on here, is claimed under the law of Maryland; and that law provides no novel, extraordinary or unrighteous mode of proof; therefore, the bar must be proved by witnesses free from interest. Courts have recognised a distinction between a bar at common law, and a statute bar. The latter goes only to the mode of recovery, and not to the essence of the contract.[b] Usury is a statute bar, and the mode of proving it must be governed by the statute which creates it; but if the statute provides none, the rules of the common law must govern.

The defendant claims to be exempted from liability by reason of the statute of Maryland, which is one also highly penal in its provisions; it provides a forfeiture of the amount loaned, and gives a penalty of three times the amount of the debt. This defence should not be sustained here, for it is an established rule, that one State will not enforce the penal laws of another State.[c] In New York it was decided[d] that a note made in France, and void there as contravening the revenue laws, was nevertheless recoverable in New York, avowedly upon the ground that Courts do not lend their aid to enforce the revenue laws of a foreign country. The same principle is recognised in England.[e] The cases are analogous, and there can be no substantial reason given why a note void in another State for usury, should not be equally valid with one void as against the revenue laws, where the Court is not bound to yield obedience to such foreign laws.

Another question arises. Here the lender is dead; by the act of 1819, the borrower is admitted to become a witness, on condition that the person against whom the evidence is offered, will not deny what the borrower offers to swear; if such denial is rendered impossible by the act of God, ought not the borrower, by a prudent construction of the proviso, to be precluded from swearing himself to the usury. If not, the defendant must necessarily prevail, for he cannot be answered, where the representative knows nothing of the facts.

[a] 6 Bacon Abr. 384.

[b] 4 John. Rep. 285, '6. 1 Caine's R. 402.

[c] 1 Kent's Com. 378.
[d] 1 John. R. 93.

[e] 6 Term R. 425.

MARDIS, for the defendant in error. The objection to the authentication of the law of Maryland, is not well taken. The act of Congress requires only that the authentication shall be under the great seal, no particular mode is prescribed, there is no other requisite, no accompanying certificate is required, no shewing in necessary to accompany the seal. The Court is bound to presume that the act is properly certified, as it has received the sanction which the act of Congress requires, which would have been withheld, had not the ordinary forms used in that State been pursued. Each State must be allowed to prescribe its own mode of keeping and certifying its laws; provided the act of Congress be complied with, in respect to the sole requisite prescribed by it, which is that it receive the sanction of him who has the custody of the great seal, for no one else can affix it but he who has it in possession. All that is necessary is to guard against imposition; if the Court is satisfied that the copy is a true one, the object is attained. The Judge has certified that the attestation of the Clerk was in due form and by the proper officer; what better evidence can we have that it was this officer who had the custody of the laws by the internal regulations of that State. The doctrine we contend for, is fully established in the case of the *United States v. Johns.*[a] The case cited by Mr Peck from Harris & McHenry, is not applicable. The construction given to the constitution of Maryland is entirely erroneous, when it is said that none but the Chancellor can affix the great seal; it is the proper business of the Clerk, not of the Chancellor himself; although in contemplation of law, it is the act of the Chancellor, or rather of the Court. In the same manner in our State, the Governor has the control of the great seal, but it is always affixed by the Secretary. But even were we technical, the constitution of Maryland says that the Chancellor may cause it to be affixed; the production of it is sufficient presumptive evidence that it was properly granted. The constitution also shews that the Clerk of the Court of Appeals has the proper custody of the laws. As to the question whether the law is still in force, all we have to do is to shew its enactment; its repeal cannot be presumed; it must be shewn by the party who insists that it is repealed. The burthen of proof lies on them in this respect. It can never be necessary to shew that a law is not repealed, it would require the proof of a negative.

In relation to the defence of usury, and the competency

of the defendant himself as a witness to prove it, I con-
cede that the statute must be strictly pursued; but it ex-
plains itself, and cannot be restricted as contended by the
plaintiff in error.   If by construction, the 4th section of
the act can be considered as restricted to notes made usuri-
ous by our laws, it is certainly not the case as to the 5th
section; that is expressly made general, and applies to the
remedy, "in all cases whatever," where suits are brought
in our Courts.   A different construction would place our
citizens on a different footing with those of other States,
which would be improper.   When foreign citizens apply
to our forums, their cases must be governed by the rules of
practice prescribed in our Courts.   The statute is clear
and it is general, and is not to be perverted.   The law of
evidence forms no part of the *lex loci contractus;* each
State has the right to regulate its forms of proceeding and
its practice.   The forms of proceeding are multifarious
and entirely different in the several States.   The contract
was confessedly void in Washington, and would have been
so if made here; and our statute merely regulates the
mode of practice by which the fact is to be ascertained in
our Courts.   The means of ascertaining the facts is not to
be governed by the *lex loci*, but by the *lex fori*.[a]   There
are many cases to this point, and none to the contrary, ex-
cept one which has been overruled.   The evidence of the
contract, and the contract itself, are different things.   Sup-
pose that here, usury was relievable in Chancery only, and
that a party to an usurious contract had removed to Geor-
gia, where there is no Court of Chancery; then, unless we
admit that Georgia has the right to regulate its own forms
of proceeding, the contract could not be enforced at all,
according to the law of the contract where made.   Again,
a note produced in Court, by our laws is evidence of the
debt, unless denied on oath.   In Tennessee, it must be
proved.   Would a note made here be received in Tenn-
essee without proof? or if made there and sued here,
would we depart from our laws and demand proof of it?
Certainly not.   In the case cited from Cowen, a different
form of action was given in New York from that of Penn-
sylvania.   The contract when made, was in itself void;
the evidence formed no part of it.

The principle insisted on that the Courts of one State
will not enforce the penal laws of another, has no applica-
tion.   We are not seeking to recover the penalty incurred
of three times the amount of the debt; we seek no penalty

*a* 4 Cowen
508.      5
Cranch 298.
2 Jonhs. 200.
11 John. 215.
3 John. 263.
14 John. 338.
4 John. 511.
Note 1.

JULY 1830.

Wilson
v.
Walker.

a 2 John. Cas.
355. 2 Wash-
ington's Rep
360.

or forfeiture, but the plaintiff is endeavoring to enforce against us a void contract, a contract which was void *ab initio,* and never had any legal existence any where. A contract void for usury in the State where made, is so every where.[a] The case cited of the contract made in violation of the revenue laws of France, is essentially different. There, it was held that the consideration was good, though the security merely was void; that was merely a regulation to enforce the payment of stamp duties, which our Courts did nos feel bound to sustain, and therefore allowed a recovery on the original consideration, which was untainted. But here, not the security merely, but the contract itself is void. Usury has always been considered a great evil, and ranked with immoral contracts, such as gaming and others of the same class, which are absolutely void, and considered as never having had any legal existence whatever, from the beginning.

The death of the lender can certainly make no difference. It would indeed be singular, that a man could by dying, change the liability or rights of others, and give to his representative, a greater right than he himself had. A representative is supposed always to stand in the place, and have the same right as the person he represents. The statute makes no such exception by its provisions. This point has no force.

BUGBEE, in conclusion. The bare fact of the seal being affixed to the exemplification, is sufficient it is said, to satisfy the requisites of the act of Congress. This cannot be. The seal cannot be made to prove that which it was not intended to prove. Suppose a Justice of the Peace was to certify that the law was truly the law of the State as he believed, and it was certified under the great seal that he was a Justice. Would that prove the law? The conclusion is, that the seal can establish only what it was intended to establish; and this can only be known by an accompanying certificate. Our Secretary of State might be called on to certify under the State seal, that a certain person held a certain office, which he would do, without knowing for what purpose it was wanted. If such officer did certify a law, and the certificate and seal were attached to his authentication, the case would be within the same argument, the seal would be there. Then although the act of Congress does not expressly require an accompanying certificate, yet a reasonable construction

must require it, else the object to be attained, may be easily defeated, and a spurious law given in evidence at any time.

It is insisted also, that the usury law is general, and applies to all cases, as well those made out of the State as those within it. It is true that it is not expressly limited, but common sense must limit it to contracts made within the jurisdiction of the State, for we cannot legislate out of it. Such a statute as the one under consideration, giving a remedy so extraordinary and contrary to the principles of the common law, should receive a very close construction, and not be extended any further than its letter requires. It is the only safe rule in such cases. What is the meaning of the word usurious in the act? We must understand it as those who framed the law did, and by referring to the act, it is found to be only those contracts where more than eight per cent is reserved. But in Maryland the rate of interest is different, and a note might be usurious there, though not so here. Then it is only such contracts as are made in contemplation and in violation of our own usury law, that are properly within the contemplation of the statute. It is said that the rule is, that each State has the right to govern the proceedings in its Courts as respects the remedy. This, as a general principle, is true. But in this case, the rule of evidence prescribed is not made a general one; it is provided in a special case only, for the protection of our citizens in such particular cases, and does not fall within the general rules.

The principle of rigid construction should also be applied to the other point involved, and the statute should not be extended to cases where the lender is dead. The remedy given to the defendant in this case, must be assimilated to the remedy in Chancery by bill of discovery; it is in fact a short and summary mode of procuring a discovery, without the circuity and time required by an application to a Chancery Court. Where the party from whom the discovery is sought is dead, the remedy in that form is gone. This act is intended to effect the same object, and where the reason of the law ceases, the law also should cease. If this construction be not adopted, the greatest possible inducement and reward is offered for perjury; there is no person to answer; the proviso would be entirely defeated; therefore the statute should no longer operate.

JULY 1830.

Wilson
v.
Walker.

28

By JUDGE SAFFOLD. The act of Congress of 1790, provides "that the public acts of the legislatures of the several States shall be authenticated by having the seal of their respective States affixed thereto; that the records and judicial proceedings of the Courts of any State shall be proved or admitted in any other Court within the United States, by the attestation of the Clerk, and the seal of the Court annexed, if there be a seal, together with a certificate of the Judge, Chief Justice or presiding magistrate, as the case may be, that the said attestation is in due form." This is the act which relates particularly to the authentication of statutes, and the records and proceedings of the Courts of justice. The act of 1804 has reference only to records and exemplifications of office books, not appertaining to a Court, but they also are required to be proved by the attestation of the keeper of said records or books, under the seal of his office, if any, together with a certificate of the presiding Justice of the Court of the county or district, or of the Governor, Secretary of State, Chancellor, or keeper of the great seal of the State; that the attestation is in due form, and by the proper officer, &c. By both acts it is further directed, that the records, &c. authenticated as aforesaid, shall have such faith and credit given to them, in every Court within the United States, as they have by law or usage, in the Courts of the State from whence the said records are or shall be taken.

It is only required, in general terms, that the public acts of the legislature shall be authenticated by having the seal of the State affixed thereto. The form of the accompanying certificate, by what officer, or whether any, is undefined. By construction or reasonable intendment, however, the authentication, by affixing the great seal, should be confined to the person or officer to whom the custody or use of it has been legally confided; and it should accompany a certificate, expressive of the object for which it is used. In this case, the Clerk of the appellate Court certifies the law as having been correctly transcribed from the law records of his office. The object of all the succeeding certificates is fully expressed to have been, to establish the facts, that the person acting as Clerk was the officer he purported to be, and the proper person to exercise the official act of certifying the law. The last certificate, intended to give validity to the whole, appears to have been made by the Register of the Court of Chancery of the State, and to have the great seal affixed thereto as

the act of the Register. It is objected that the Register was not the legal keeper of the seal; nor does he certify the law, but only that Culbreth was Clerk of the Executive Council. In support of this argument, reference has been made to a volume purporting to contain the constitutions of the several States, to shew that by the constitution of Maryland, the Chancellor is the keeper of the great seal.

If from the authority of this volume, it not being contested, we can know that such is the constitution of that State, it is not conclusive that no other can use the seal, especially when opposed to the fact that it is officially used by a different officer, in the execution of the higher trust. Custom, usage, or a statute of that State, may with consistency, have sanctioned the practice of having it affixed in the authentication of documents, by the Register of the Court of Chancery, notwithstanding the Chancellor may be the nominal keeper. Both being officers of the same Court, the inferior may be viewed only as the organ through which the other acts. In the present state of the evidence on this point, the usual presumption applies, that the officer who has used the great seal, is the proper person to whom the trust has been confided. As to the objection that the Register does not certify the law, it is sufficient to remark, that his certificate as well as all the preceding, look to the establishment of that fact, and tend alone to that object; so that the act of affixing the seal to the latter certificate, at least implies a sanction, not only to it, but to all that preceded, and is deemed sufficient. The manner of affixing the seals is a regulation very different in the different States.[a]

[a] 4 Dallas 412.

The second assignment presents a novel question. It is whether under the statute of this State, a defendant is a competent witness to prove a contract usurious, made in a different State, and between residents of the same; and whether after the death of the creditor, this privilege, if otherwise existing, would not be barred in an action brought by his representatives? We decline a particular examination of the latter branch of the question, as it is unimportant to the decision, and there is some difficulty in determining whether the literal construction or more liberal policy of the statute should prevail.

With respect to the privileges of the defendant in relation to this contract made at Washington City, on one side it is contended the validity of the contract depends

*a* 2 John, 200.
11 John. R.
215. 4 Cow-
en R. 508.

on the laws of the State in which it was made, and that it cannot be impaired by the unrestrained oath of the party charged. On the contrary it is insisted, that the remedy in all cases is according to the *lex fori*, and that each party is entitled to the benefit thereof.

It is admitted as a general proposition, that the *lex loci* governs the interpretation of contracts, and that the remedy must be prosecuted according to the law of the State where the action may be brought. *a*

This rule in relation to the *lex fori* applies to the form of the proceedings, the time during which the right may be prosecuted, to the extent of the common law doctrine, and also to the rules of evidence. But on the subject of usury, the statute of this State has created a peculiar protection against contracts, for the security of our own citizens, or others contracting under our laws. It has made this great innovation on the rules of evidence, and extended this extraordinary privilege of the defendant to violations of our own law against usury; not to contracts made with reference to laws of other States, and persons without our jurisdiction. It is true the statute does not contain this express limitation to its operation, but it necessarily results from its true spirit and design. The fifth section declares, that the borrower, or party to such usurious bond, &c. from whom such higher rate of interest is or shall be taken, shall be a good and sufficient witness to give evidence of such offence. The contract to be thus impeached is denominated an offence, which evidently consists in taking the higher rate of interest than is allowed by an act itself. The defence of usury seeks to subject the lender to a forfeiture, not only of the premium contracted, but also the true debt. These consequences demand a strictness of construction in relation to the remedy, which would be inapplicable to ordinary transactions.

Contracts made in contemplation of our statute, and subject to its jurisdiction, imply the condition that they shall be void, if the borrower will give evidence on the trial that a higher rate of interest than eight per cent has been reserved by the contract; provided the person against whom such evidence is offered to be given, will not deny on oath the truth of what such witness offers to swear against him; if he will, such evidence shall not be admitted. Hence, in contracts executed in this State, or with reference to its laws, a peculiar confidence is reposed in the debtor, or other security in the way of proof provided; and this ex-

ftraordinary defence could only have been intended against claims contracted and prosecuted in violation of the law authorising it, not the statute of Maryland. There the legal rate of interest is six per cent. Further to test the principle, suppose the rate contracted had been seven per cent, it would have violated the statute of that State, while it was below the legal rate here, and consequently not within the mischief intended to be suppressed.

The Court are unanimous in reversing the judgment, and remanding the cause.

Reversed and remanded.

JUDGE COLLIER, concurred in part in the opinion delivered, but expressed an inclination to dissent in part.

JUDGE WHITE, not sitting.